# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 2:98-cr-00185-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| JEREMIAH LOCUST, SR., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Reduction in Sentence Pursuant to 18 U.S.C. §3582(c)(1)(A). [Doc. 205].

**I.  BACKGROUND**

On June 21, 1998, the Defendant Jeremiah Locust, Sr. pointed a rifle at several visitors in the Great Smoky Mountains National Park in North Carolina. [Doc. 209: PSR at ¶¶ 7-8]. The Defendant stood in the middle of the Blue Ridge Parkway as one visitor approached; he then raised his rifle and pointed it straight at her. [Id. at ¶ 7]. The visitor accelerated past the Defendant and called 911. [Id.]. Another individual was with his two children when the Defendant came out of the woods armed with a rifle. [Id. at ¶ 8]. The Defendant stuck his rifle into the individual's car and only removed it when the individual grabbed the barrel and pushed it over the steering wheel.

[Id.]. That individual also was able to drive away and contact the police. [Id.]. Several other park visitors also reported seeing the Defendant with a can of beer in one hand and a rifle in the other. [Id.].

Law enforcement officers, including Rangers Joseph Kolodski and Anthony Welch, responded to visitors' reports about the Defendant's conduct. [Id. at ¶¶ 9, 10]. Ranger Kolodski located the Defendant first. [Id. at ¶ 10]. When he saw Ranger Kolodski, the Defendant left the road and "entered the woods in order to take cover and wait for an opportune moment to fire upon Kolodski and his fellow officers." United States v. Locust, 95 F. App'x 507, 510, 516 (4th Cir. 2004). While he temporarily lost sight of the Defendant, Ranger Kolodski eventually "radioed his fellow officers to report that he had regained sight of" the Defendant. Id.

The Defendant then shot Ranger Kolodski, who "fell to the ground, gripping his chest." Id. at 510. "Ranger Welch, who had just arrived at the scene in his vehicle, heard the gunshot and saw Kolodski fall." Id. The Defendant "utter[ed] some type of chant after shooting Ranger Kolodski." Locust, 95 F. App'x at 514. The Defendant continued firing down on officers, limiting their ability to safely assist and provide first aid to Kolodski. Id. at 510.

Ranger Welch and another ranger took cover behind their cars as the Defendant continued to fire, shooting out Ranger Welch's windshield. Id. at 514. Ranger Welch moved his car multiple times in the hope that the Defendant would follow him away from Ranger Kolodski's position, and the Defendant continued to fire. [Doc. 209: PSR at ¶ 11].

Although "the scene was still considered dangerous," rangers were able to lift Ranger Kolodski into a ranger's vehicle and transport him to a waiting ambulance. [Id. at ¶ 14]. A helicopter then took Ranger Kolodski to a hospital, where he was pronounced dead of a single gunshot wound to the chest. [Id.].

Officers arrested the Defendant hours later several miles from where he killed Ranger Kolodski. Locust, 95 F. App'x at 510. Back at the crime scene, the officers found a "high-powered rifle" that the Defendant had purchased the year before, shell casings, and footprints matching the Defendant's boots. [Doc. 209: PSR at ¶¶ 17-18].

A federal grand jury in the Western District of North Carolina indicted the Defendant and charged him with the murder of Ranger Kolodski in the performance of his official duties (Count One); the murder of Ranger Kolodski while assisting another ranger in the performance of that ranger's official duties (Count Two); the attempted murder of Ranger Welch in the

3

performance of his official duties (Count Three); and assault with a deadly weapon of a person travelling on the Blue Ridge Parkway (Count Four). [Doc. 13: Indictment]. The Government filed a notice of intent to seek the death penalty. [Doc. 54].

After a multi-day trial, a jury convicted the Defendant of murder and attempted murder (Counts One, Two, and Three) and found him not guilty of assault (Count Four). [Doc. 97]. The jury made a specific finding that the Defendant had murdered Ranger Kolodski while "lying in wait." Locust, 95 F. App'x at 511. Members of Ranger Kolodski's family asked for the Defendant to be spared the death penalty with the expectation that he would serve a sentence of life imprisonment. [See Doc. 213-1 at 4, 6, 13]. The United States subsequently withdrew its notice of intent to seek the death penalty. Locust, 95 F. App'x at 511.

This Court[1] sentenced the Defendant to a term of life imprisonment on Counts One and Two and a concurrent sentence of 240 months on Count Three. [Doc. 117 at 2]. The Fourth Circuit affirmed the Defendant's conviction and sentence for Count One and Count Three but vacated the conviction and sentence on Count Two on double jeopardy grounds. Locust,

---

[1] The Honorable Lacy H. Thornburg, United States District Judge, presiding. Due to Judge Thornburg's retirement, this matter was reassigned to the undersigned.

95 F. App'x at 517-18. The Defendant is currently 73 years old and is incarcerated at FCI Edgefield.[2] Due to his life sentence, he has no projected release date.

In July 2024, the Defendant filed the present motion seeking compassionate release. [Doc. 205]. After receiving extensions of time to do so, the Government filed a response in opposition on September 30, 2024. [Doc. 213]. The Government also submitted a number of letters from Ranger Kolodski's family members regarding the Defendant's request.[3] [Doc. 213-1]. After receiving extensions of time to do so, the Defendant filed a reply. [Doc. 219]. Accordingly, this matter is ripe for disposition.

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

---

[2] See https://www.bop.gov/mobile/fine_inmate/byname.jsp#inmate_results (last visited Feb. 3, 2025).

[3] Among these are letters from Ranger Kolodski's widow and son, who recount having received unwelcome contact from members of the Defendant's family, his cell mates, and others proclaiming his innocence and calling for his release. [See, e.g., Doc. 213-1 at 4, 11].

5

behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Government concedes that the Defendant has exhausted his administrative rights with the BOP. [Doc. 213 at 5-6]. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. The Sentencing Commission amended § 1B1.13 effective November 1, 2023, to address the amendment to § 3582(c)(1)(A) authorizing courts to grant a motion for a sentence reduction based on a defendant's own motion. The amended policy statement also sets forth a list of specified extraordinary and compelling reasons, considered either singly or in combination, that can warrant a

reduction in sentence, including: (1) the defendant's medical condition, including a terminal illness or serious medical or physical condition that substantially diminishes the defendant's ability to provide self-care or requires long-term or specialized medical care; (2) the defendant's age, if the defendant at least 65 years old, is experiencing a serious deterioration in physical or mental health, and has served at least 10 years or 75 percent of his or her term of imprisonment; (3) certain family circumstances, such as the death or incapacitation of the defendant's child, or where the defendant would be the only available caregiver for an incapacitated family member; (4) where the defendant was a victim of abuse while in custody; (5) any other reasons that are similar in gravity to the aforementioned reasons; and (6) in the event of an "unusually long sentence," the defendant has served at least 10 years of the term of imprisonment, and there has been a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) that would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. U.S.S.G. § 1B1.13(b)(1)-(6).

In arguing that he is entitled to early release, the Defendant appears to rely primarily on § 1B1.13(b)(2), which provides that extraordinary and compelling reasons exist for a sentence reduction if the defendant "(A) is at

least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2).  Here, the Defendants argues that he is "over the age of 65," has served "more than 30 years[4] in prison," "suffers from a number chronic and serious medical ailments related to the aging process," and "is presently experiencing the deterioration of both his mental and physical health that substantially diminishes his ability to function in a prison." [Doc. 205 at 4].  He cites a "non-exhaustive list of illnesses" that include "Diabetes Mellitus Type I," prostate hypertrophy, hyperlipidemia, bone disorder, Bell's palsy, hypertension, chronic kidney disease, vitamin D deficiency, allergic rhinitis, "Elevated prostate specific antigen," "vision and extremity problems relating to his diabetes," and "skin issues."  [Id. at 4-5].[5]

---

[4] The Court notes that the Defendant committed the instant offenses in 1998.  Therefore, even considering his pretrial detention, the Defendant has served far less than 30 years in prison to date.  However, it is undisputed that the Defendant is over the age of 65 and has served at least ten years in prison, as required by § 1B1.13(b)(2).

[5] In addition to reasons based on his current health and age, the Defendant also argues that his sentence is "excessive" and "disproportionate" because his sentence exceeds the "median sentencing for a murder conviction." Id. at 6-8. He further contends that he "has demonstrated extraordinary rehabilitation as proven by his many accomplishments, prison records, and the positive relationship he maintained with both his family and community." Id. at 8-9.  Finally, he contends that the presence of COVID-19 continues to pose a threat of serious illness or death, despite his receipt of the COVID-19 vaccination. Id. at 10-11.

Even if the Defendant were to meet the criteria under § 1B1.13(b)(2), before granting the requested relief the Court must still determine whether "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court also must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Here, the Court concludes that any reduction in the Defendant's sentence would not be consistent with § 1B1.13, as the Defendant remains "a danger to the safety of any other person" and "to the community." U.S.S.G. § 1B1.13(a)(2). When last outside of prison, the Defendant senselessly threatened park visitors, including visitors with children, with a gun. When a park ranger responded, the Defendant murdered him and kept other rangers from providing first aid by firing at them and trying to kill them also. Such dangerous and violent behavior, both to the public and to law enforcement, demands the harshest of penalties.

While the Defendant may now be older and in declining health, these factors do not eliminate the danger that the Defendant presents to the public. Relying on statistics from the United States Sentencing Commission, the Defendant argues that "offenders like Mr. Locust, if released at his age," have a recidivism rate of "16.0 percent." [Doc. 209 at 14]. While the Defendant

9

argues that this recidivism rate is low, [id.], these figures suggest that, even accounting for the Defendant's age, his early release would still present an unacceptably high risk to the public.

While the Defendant lists a variety of medical conditions, he has failed to show that any of them would minimize his risk to the public. To the contrary, his defense at trial focused on his diabetes, suggesting that his poor health somehow contributed to his lethal conduct. See Locust, 95 F. App'x at 510–11; [Def.'s Reply, Doc. 219 at 2 (arguing that the fact that the Defendant "was hypoglycemic at the time and had been consuming alcohol . . . cannot be ignored")]. The Defendant's testimony and that of his defense expert suggested that his health is such that he might engage in violent conduct without "planning and thinking ahead." Id.

Further, while the Defendant has had a lack of significant disciplinary issues in prison and engaged in a number of courses and work programs, his conduct outside of prison was extraordinarily dangerous, and his good behavior within the controlled and structured environment of a prison does not mean that the Defendant will not return to dangerous conduct if released.

Turning now to the § 3553(a) factors, the Court finds that these factors call for the Defendant's life sentence to remain intact. The sentence the Defendant is currently serving remains no "greater than necessary" to

10

comply with the purposes that the statue describes. 18 U.S.C. § 3553(a). Moreover, a sentence of anything less than life imprisonment, even in light of the Defendant's present age and medical circumstances, would be grossly inadequate to "reflect the seriousness" of his offense. 18 U.S.C. § 3553(a)(2)(A). The Defendant threatened individuals and families at gunpoint. He murdered Ranger Kolodski after lying in wait. And he fired at officers for an extended period while those officers attempted to render aid to Ranger Kolodski. The seriousness of the Defendant's offenses alone renders any sentence shorter than life imprisonment grossly inadequate.[6]

While the Defendant contends that his sentence is "excessive" and "disproportionate" because his sentence exceeds the "median sentencing for a murder conviction," [Doc. 205 at 6-8], the life sentence imposed on the Defendant was the sentence called for in the Sentencing Guidelines. Thus, keeping the Defendant's sentence intact would "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Considering all of the relevant circumstances, the Court concludes that a reduction of the Defendant's sentence to time served would not reflect the

---

[6] The Court notes that were it not for the mercy expressed by the victim's family, the Defendant would have faced a death penalty trial.

seriousness of the Defendant's offense, would not promote respect for the law, would not provide just punishment, would not afford adequate deterrence, and would not protect the public from the Defendant's further crimes. For all of these reasons, the Defendant's motion for a sentence reduction is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Reduction in Sentence Pursuant to 18 U.S.C. §3582(c)(1)(A) [Doc. 205] is **DENIED**.

**IT IS SO ORDERED.**

Signed: 2/6/2025

Martin Reidinger
Chief United States District Judge